# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ED KASHI,<br>　　　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**MCGRAW-HILL GLOBAL EDUCATION HOLDINGS AND MCGRAW-HILL SCHOOL EDUCATION HOLDINGS, LLC,**<br>　　　　　　　　**Defendants.** | CIVIL ACTION<br><br><br><br>NO.  17-1818 |

## MEMORANDUM OPINION

Plaintiff Ed Kashi brought this lawsuit for copyright infringement against Defendants for using several of his photographs without his permission.  In a different matter not involving Plaintiff, Defendants learned that Plaintiff's attorneys HSBK had retained one of Defendants' former employees, Mari Masalin-Cooper, as a consultant.  For that reason, Defendants moved for disqualification of HSBK in that case and succeeded.[1]  Now, Defendants seek to do the same to HSBK here.  For the reasons that follow, Defendants' motion to disqualify Plaintiff's counsel shall be denied.

## I.    Facts[2]

Mari Masalin-Cooper worked for Defendants between 2012 and the spring of 2016. While she was there, her job duties included assisting Defendants' outside counsel with discovery requests, identifying persons with knowledge to serve as witnesses, and in some cases, submitting affidavits or declarations in litigation.  During the course of her employment,

---

[1] *See Grant Heilman Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC*, No. 17-694, 2018 WL 2065060 (E.D. Pa. May 2, 2018) (Baylson, J.) [hereinafter "*Grant Heilman*"].  Judge Baylson's opinion has led to further disqualification motions in other cases.  *See* ECF No. 51 (attaching *Harrington v. McGraw-Hill Global Educ. Holdings, LLC*, No. 17-2960 (D. Colo. July 25, 2018), which denied Defendants' motion to disqualify)

[2] This Court need not conduct an evidentiary hearing, as the parties do not dispute any material fact relevant to this motion.  *See De La Cruz v. Virgin Islands Water & Power Auth.*, 597 F. App'x 83, 89 (3d Cir. 2014).

Masalin-Cooper came across confidential information, some of which was also privileged. Masalin-Cooper was also responsible for making sure Defendants did not use licensed photos outside the scope of their license. As relevant here, she participated in at least one case involving a different plaintiff but a similar issue to that presented in this case: whether Defendants had exceeded the scope of the license they were granted.

A few months after Masalin-Cooper's left Defendant's employ she contacted a HSBK attorney. She told him that she had recently left her job at McGraw-Hill and offered to consult "on the best publishing business practices of content licensing and contract compliance as it pertains to copyright." He did not respond. But another HSBK attorney who she contacted did. After some discussion with that attorney Masalin-Cooper entered into a consulting agreement with HSBK. And, once the agreement was signed, she spoke on the phone with yet another HSBK attorney, Amanda Bruss, for about one hour. The substance of that conversation concerned Defendants' databases, permissions, and licensing procedures. Moreover, Bruss's declaration claims she obtained only non-privileged information that she later learned from other witnesses. After that hour-long conversation, there was no further contact between Bruss and Masalin-Cooper. In January 2016, Masalin-Cooper received a W-9 form from HSBK reflecting payment for her work and, in October 2017, an e-mail indicating that the relationship between HSBK and Masalin-Cooper had been terminated.[3]

## II. Analysis

It is within a District Court's power to disqualify attorneys in order to supervise their professional conduct. *See Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975). Disqualification, however, must "on the facts of the particular case . . . [be] an appropriate means

---

[3] Another HSBK attorney submitted a declaration indicating that he defended Masalin-Cooper's deposition in a separate case, but he had no other contact with her.

of enforcing the applicable disciplinary rule." *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Thus, the analysis (a) first determines whether an ethical rule was violated, and (b) if so, whether disqualification is an appropriate sanction. *See Griffin-El v. Beard*, 2009 WL 2929802 at \*10 (E.D. Pa. Sept. 8, 2009).

### A. Rule Violations

The Pennsylvania Rules of Professional Conduct apply in the Eastern District of Pennsylvania. *See* Local Rule 83.6, Rule IV(B). Pennsylvania Rule of Professional Conduct 5.3 imposes certain duties on lawyers with respect to non-lawyers whom they employ. *See* Pa. R.P.C. 5.3. That responsibility extends "to a non-lawyer employed or retained by or associated with a lawyer." *See id*. Here, Masalin-Cooper, although not an employee of Plaintiff's attorneys, falls into the ambit of being "retained by" or "associated with" them, as she signed a consulting agreement with and was paid by HSBK. Thus, the analysis below considers whether HSBK's consultation with Masalin-Cooper violated any of the substantive prohibitions of Rule 5.3. Specifically, Defendants contend that HSBK attorneys violated Rules 5.3(a) and (c).

#### i. Rule 5.3(a) Violation

Rule 5.3(a) requires lawyers with "managerial authority" to undertake "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the [non-lawyer's] conduct is compatible with the professional obligations of the lawyer." Pa. R.P.C. 5.3(a). While the parties' exhibits establish that HSBK did not actively seek out privileged information from Masalin-Cooper there is nothing in the record showing that HSBK undertook any reasonable efforts to ensure it would not come across such information. Indeed, not one of the four declarations provided by Plaintiffs' counsel suggests that HSBK told Masalin-Cooper not to communicate privileged information. *See also id*., cmt. 3 ("When retaining . . . a non-lawyer outside the firm, a lawyer should communicate direction appropriate under the circumstances to

give reasonable assurance that the non-lawyer's conduct is compatible with [her] professional obligations."). The declarations instead suggest that, despite knowing Masalin-Cooper worked for Defendants, HSBK did not recall that she was involved in other litigations for Defendants and did not even think to check. Thus, HSBK violated Rule 5.3(a).

ii. Rule 5.3(c) Violation

While the professional rules only regulate attorneys, *see, e.g.*, *Commonwealth v. Boring*, 684 A.2d 561, 566 (Pa. Super. 1996), they indirectly apply to the actions of non-lawyer personnel through Rule 5.3. Specifically, Rule 5.3(c) renders lawyers responsible for the conduct of non-lawyers if that conduct would amount to a violation of the substantive rules if performed by a lawyer. *See* Pa. R.P.C. 5.3(c) ("A lawyer shall be responsible for conduct . . . that would be a violation of the Rules . . . if engaged in by a lawyer"); *see Grant Heilman*, 2018 WL 2065060 at *9-10 (conduct allegedly in violation of ethical rules analyzed as "if performed by a lawyer" or as though the person "were an attorney."). Thus, HSBK may be liable for Masalin-Cooper's actions through Rule 5.3(c) if her actions, assuming she were an attorney, would violate a substantive rule.

Here, Defendants claim that Masalin-Cooper's actions violated Rule 1.9. Rule 1.9, as relevant here, imposes duties on lawyers with respect to former clients, specifically prohibiting lawyers from revealing information relating to the representation of a client. *See* Pa. R.P.C. 1.9(c) ("A lawyer . . . shall not . . . reveal information relating to the representation").[4] With respect to non-lawyers, the issue often arises if non-lawyers leave one client or firm to go work

---

[4] Defendant also argues HSBK violated Rule 1.6, which states, "A lawyer shall not reveal information relating to representation of a client," without the client's informed consent and states that the duty continues after the attorney-client relationship ends. Pa. R.P.C. 1.6. This overlaps with Rule 1.9(c), which prohibits lawyers from revealing "information relating to the representation" of a former client. Pa. R.P.C. 1.9(c). Because the Rules overlap in this case, both are considered together. The other subsections of Rule 1.9 prohibit "represent[ing] another person in the same or substantially related matter." Pa. R.P.C. 1.9(a)-(b). Masalin-Cooper did not "represent" Kashi, and thus those two subsections are not relevant here.

for a lawyer working on the other side.  *See De La Cruz v. V.I. Water & Power Auth.*, 597 F.

App'x 83, 89 (3d Cir. 2014).  In that instance, the new lawyer becomes responsible for the non-

lawyer's conduct because the "former [employer] has no effective means of protecting against

the [non-lawyer's] disclosure of the client's confidences once the [non-lawyer] leaves . . .

employment." *See Hodge v. URFA-Sexton, LP*, 758 S.E.2d 314, 321 (Ga. 2014) (interpreting

similarly worded provision of Georgia's Professional Rule 5.3).  However, this duty does not fall

to the new lawyer "in the absence of a prior attorney-client relationship." *See id*.; *see also Clark*

*Capital Mgmt. Grp., Inc. v. Annuity Investors Life Ins. Co.*, 149 F. Supp.2d 193, 196 (E.D. Pa.

2001) (violation of Rule 1.9 required determining person was a former client of lawyer).

Thus, in order to establish that HSBK violated Rule 5.3(c), predicated on Masalin-

Cooper's alleged violations of Rule 1.9, Defendants must establish that Masalin Cooper violated

Rule 1.9 by showing that (1) if she were an attorney, she would have been in an attorney-client

relationship with Defendants and (2) she revealed information concerning that representation.

Assuming both questions are answered in the affirmative, Defendants must next show that (3)

Masalin-Cooper's actions are attributable to the firm.

1.  *Rule 1.9 Violation: Representation of Defendants*

First, Defendants must show is that if Masalin-Cooper were an attorney, she represented

Defendants.  *Clark Capital Mgmt. Grp., Inc.*, 149 F. Supp.2d at 196.  Specifically, Pennsylvania

courts find an attorney-client relationship even "absent an express contract" when the party has

"a subjective belief that the attorney is representing him, and that this belief is reasonable." *See*

*Johnson v. Buchanan Ingersoll & Rooney, P.C.*, 2013 WL 11272844 at *4 (Pa. Super. Ct. Mar.

26, 2013).  Although HSBK argues that Masalin-Cooper was not a "legal employee" and

reported to no legal employees, Masalin-Cooper participated in litigation discussions with

outside counsel, specifically with respect to ongoing litigation and discovery.  Given Masalin-

Cooper's significant participation in such discussions, Defendants would certainly have held a reasonable belief that they were represented by Masalin-Cooper if she were an attorney.

## 2. *Rule 1.9 Violation: Revealing Information*

Next, Defendants must show that information about them was revealed by Masalin-Cooper. *See Dworkin v. Gen. Motors Corp.*, 906 F. Supp. 273, 277 (E.D. Pa. 1995) (the party requesting disqualification "must prove that [the person] has actually revealed information relating to the representation of" the party). Specifically, Bruss's declaration attaches Masalin-Cooper's deposition testimony. That testimony shows that Masalin-Cooper worked with Defendants to try "to create a proprietary database that would manage the rights contracts, the permission contracts, and the assets that were being acquired through those contracts." Masalin-Cooper stated that while her department did not directly use the database, she discussed the process of litigation discovery with the department that did use the database and "how each of us might be handling [discovery] based on the resources that we had." After her employment with Defendants ended, Masalin-Cooper talked to HSBK – specifically, Bruss – about the database and about Defendants' discovery process in general.

In other words, Masalin-Cooper revealed information relating to her "representation" of Defendants. Whether or not the information she revealed was confidential is not the point, given that as an attorney she would have been required to protect all information relating to the representation. *See Dworkin*, 906 F. Supp at 277; *see also* Pa. R.P.C. 1.6, cmt. 3 (stating the rule protects "all information relating to the representation, whatever its source."). Moreover, even if Masalin-Cooper had not revealed such information, HSBK failed to rebut the presumption that arises that Masalin-Cooper revealed such information. *See De La Cruz*, 597 F. App'x at 89 (discussing ABA Model Rule 5.3). Specifically, HSBK did not show that it took precautions to ensure information it received from Masalin-Cooper was not confidential.

These facts show a Rule 1.9 violation.

3. *Attribution to HSBK through Rule 5.3(c)*

Rule 5.3(c) next requires determining if HSBK either (1) "order[ed] or, with the knowledge of the specific conduct, ratifie[d] the conduct" or (2) "kn[ew] of the conduct at a time when its consequences c[ould] be avoided but fail[ed] to take reasonable remedial action." Pa. R.P.C. 5.3(c). Defendants do not suggest that HSBK specifically ordered or ratified the conduct. However, the second prong applies, as HSBK knew Masalin-Cooper worked for Defendants when she informed the firm in her emails. Moreover, HSBK knew about Bruss's upcoming consultation with Masalin-Cooper, as evidenced by the emails attached to the declarations, at a time when its consequences could have been avoided. Thus, Masalin-Cooper's violation is attributable to HSBK through Rule 5.3(c).

**B. Appropriate Sanction**

The question whether disqualification is an appropriate sanction for these violations is beset by competing concerns. While courts must enforce the ethical rules, litigants are also entitled "to retain the counsel of [their] choice" and attorneys should be able "to practice without excessive restrictions." *See Miller*, 624 F.2d at 1201. Moreover, the integrity of the legal profession and its high standing in the community are other relevant factors to consider. *See Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978).[5]

The purpose of the substantive rules that HSBK violated is to obviate any concerns clients may have in speaking freely with their lawyers. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984). Corporate clients speak through their employees. Vindicating that interest, however, does not lead to disqualification of HSBK from this case. *See*

---

[5] Defendants only request disqualification, and thus no other sanction is considered.

*Miller*, 624 F.2d at 1201 ("disqualification never is automatic."). Defendants fail to contravene

HSBK's assertion that much of the information it obtained from its consultation with Masalin-

Cooper was not confidential and later disclosed. *See* Pa. R.P.C. 1.9, cmt. 8 (the Rule "does not

preclude the lawyer from using generally known information . . . when later representing another

client.").

Moreover, this case is not *Grant Heilman*, and the potential prejudice Defendants

suffered in this case is less. Specifically, the concerns about the violation in *Grant Heilman* were

more severe: Masalin-Cooper participated in a prior dispute between the parties in *Grant*

*Heilman*, but did not do so in this instance. On the other hand, disqualification will prejudice

Kashi. HSBK has spent extensive time and effort on Kashi's case, having opposed a motion to

transfer and a motion to dismiss as well as taking the case through discovery and briefing a

summary judgment motion. Furthermore, Kashi has submitted an affidavit that he selected

HSBK because of its past successful representation of him. *See Commonwealth Ins. Co. v.*

*Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992) ("a party's choice of counsel is

entitled to substantial deference.").

Finally, there is a concern about the use of disqualification as a tactic against opposing

counsel. *See, e.g.*, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) (discussing

concern about "tactical use of disqualification motions"). Because of this concern, waiver is

recognized as a valid basis to deny a motion to disqualify. *See, e.g.*, *Commonwealth Ins. Co.*,

808 F. Supp. at 1208. Courts look at the length of time that lapsed between when the party

requesting disqualification learned about the basis for disqualification and when it moved for

disqualification. *See id*. Here, by waiting at least ten months before they filed their

disqualification motion, Defendants  have waived the remedy of disqualification.

An appropriate order follows

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**Date: August 27, 2018**                    **WENDY BEETLESTONE, J.**